UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDWIN RICHAR J.B.,

        Petitioner,

    v.

ORESTES CRUZ, et al.,

        Respondents.

No. 1:26-cv-00660-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Edwin J.B.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On January 28, 2026, the Court granted Petitioner's Motion for Temporary Restraining Order ("TRO") and ordered his immediate release. (ECF No. 7.) The Court also ordered Respondents to show cause why the Court should not grant the habeas petition and enter judgment in favor of Petitioner. (*Id.*) Respondents responded to the Order to Show Cause on February 3, 2026. (ECF No. 11.) Petitioner filed a reply on February 6, 2026. (ECF No. 13.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Peru.  (ECF No. 1-2 at 3.)  He initially entered the United States on May 20, 2023, without inspection or admission and was taken into custody by the Department of Homeland Security ("DHS") and placed in expedited removal proceedings. (*Id.*)  On May 21, 2023, Petitioner expressed fear of being harmed if returned to Peru and was placed in credible fear proceedings.  (*Id.* at 6–9.)  On August 17, 2023, while still in DHS custody, Petitioner was given a credible fear interview.  (*Id.* at 11.)  He was found to have established a credible fear of being tortured if returned to Peru.  (*Id.* at 39.)  Petitioner was subsequently issued a Notice to Appear on August 18, 2023, and released on parole with reporting requirements on August 21, 2023.  (*Id.* at 43–48.)

Following his release, Petitioner lived in Bakersfield, California.  (ECF No. 1 at 10.)  He consistently complied with all reporting requirements set forth by DHS and appeared at all required hearings before the Executive Office of Immigration review.  (*Id.* at 2–3.)  Petitioner received a traffic ticket for failing to stop at a stop sign and driving without a license on May 26, 2025.  (*Id.* at 3.)  Petitioner has no criminal convictions.  (*Id.*)

On October 29, 2025, Petitioner was taken into custody at a check-in appointment with the Immigration and Customs Enforcement ("ICE") office in Bakersfield.  (*Id.*)  He was detained without a hearing or opportunity for bond.  (*Id.* at 3, 6.)  Prior to the Court ordering his immediate release (ECF No. 7), Petitioner was detained at the Mesa Verde ICE Processing Facility for approximately three months (ECF No. 1 at 10).

On January 26, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges the lawfulness of his civil detention.  (*Id.* at 10.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 10.)  In opposition, Respondents contend Petitioner is an "applicant for admission" subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").[2]  (ECF No. 11 at 1–2.)  Respondents also assert that Petitioner "certainly violated a condition of his Parole" when he was cited for a traffic infraction on March 26, 2025.  (*Id.* at 2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

---

[2]   Respondents do not identify a specific statutory authority for Petitioner's detention.  (ECF No. 11 at 1–2.)  However, based on the cases cited in Respondents' footnote, the Court understands their position to be that Petitioner is detained under § 1225(b)(2).  (*Id.*)

the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom. The Government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Although Respondents' opposition references Petitioner's traffic ticket from 2025, they put forth no evidence that Petitioner was in fact found to have violated the terms of his parole. (ECF No. 11 at 2.) Nor do Respondents claim Petitioner was arrested and detained because of a parole violation. (*Id.*) The Court thus rejects Respondents' position and finds that even with a traffic ticket, Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened his liberty interest).

The Court is not persuaded by Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). (ECF No. 11 at 1–2.) Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' position. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed

interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondents put forth no new arguments or facts justifying a different conclusion in this case. Accordingly, Petitioner has a clear interest in his continued liberty protected by the Due Process Clause.

### B. Process Required

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). The *Mathews* factors support requiring Petitioner receive notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-

CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). As Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing, the risk that he is being detained without justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a hearing is negligible. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the Government's interest is further diminished where, as here, Petitioner was already found appropriate for release and has complied with the conditions of his release. *R.D.T.M.*, 2025 WL 2686866 at *6. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions.". *Hernandez*, 872 F.3d at 994.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention. He received neither. Respondents therefore violated Petitioner's due process rights.[3]

**IV.   CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

---

[3] Petitioner also challenges his detention as violating the Immigration and Nationality Act. (ECF No. 1 at 10.) As the Court concludes Petitioner's detention violates the Due Process Clause, the Court need not address Petitioner's statutory claim.

3.      The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7